[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 409 
The validity of the appeal in this case depends upon the act of 1854, "in relation to special proceedings." (Laws of 1854, p. 592.) Independently of that statute, the general term acquired no jurisdiction of the proceedings; and, according to the principle settled in Gracie v. Freeland (1 Comst., 228), there was consequently nothing for review in this court. By the first section of the act above mentioned, "an appeal may be taken to the general term of the supreme court, from any judgment, order or final determination made at the special term of said court,
in any special proceeding therein." The court here referred to is the supreme court, having general jurisdiction in law and equity. In designating it, the legislature have adopted the language of the constitution. (Const. 1846, art. 6, §§ 3and 6.) Now if the order of the special term, confirming the assessment in this case, and which constituted the subject of appeal to the general term, was made by a tribunal pro hac vice
of inferior and subordinate jurisdiction, it was not the order of the supreme court and the act of 1854 has no application. However comprehensive the language of the statute may be, the universality of its provisions demonstrates that the orders, judgments and final determinations mentioned, were supposed by the legislature to proceed from the same corporate body; a court, one and indivisible *Page 410 
whatever might be the subject of its adjudication. Indeed the whole question on this branch of the case is, whether the law of 1813, relative to streets in the city of New-York, merely enlarged the jurisdiction of the supreme court, or whether it established a subordinate tribunal with a special and limited jurisdiction to be administered by those who were ex-officio judges of that court. In Striker v. Kelly (7 Hill, 9), Judge Bronson maintained the latter proposition; and if his assumption founded upon the decisions of his court and the dicta of the judges was correct, his conclusion was inevitable; and the practice of allowing a certiorari, as a court, to remove their own proceedings as commissioners was regular and appropriate. To this effect were the numerous decisions referred to upon the argument by the counsel for the appellants. But in that case a majority of his associates differed from Judge Bronson, and held that the powers conferred by the act vested in, and were to be exercised by the supreme court, and this view was concurred in by the court for the correction of errors, although the judgment was reversed on another ground. (2 Denio, 323.)
If the law of 1813 enlarged the jurisdiction of the supreme court, which, in effect, was decided in Striker v. Kelly, no other change was produced. The powers incident to its general jurisdiction, so far as applicable, at once attached to the new subject. In administering this law, as every other, the court could require the services of its officers, punish for contempt, issue attachments, use the buildings appropriated to the ordinary business of the court, and set aside the proceedings on sufficient cause. The contrary was determined, I am aware, by the former court, but upon the hypothesis that they acted as commissioners, and not as the supreme court in executing this statute.
When the former court granted a discovery, in pursuance of a statute authority for that purpose, it was never supposed that, in affording that relief, the court lost its identity, and became either the court of chancery or an inferior *Page 411 
court of equity, whose decisions could be reviewed by the chancellor. The class of cases and the mode of proceeding, however, were prescribed by the law, which was so far special and limited. Yet in this form it became a part of the jurisdiction of the court, and on the proper occasion relief was afforded in the same way, as a rule would be granted to vacate a default, or set aside an execution.
There is no difference in this respect between a jurisdiction conferred by legislation and that granted by the constitution. Had the law in question constituted a portion of that mass of powers delegated to and recognized as pertaining to the supreme court by the organic law, the mode of its administration, the immunity of the judges, the presumption in favor of the regularity of the proceedings, and the effect of the decisions under it, would be precisely what they now are.
We are all, therefore, of opinion that the supreme court, in reviewing the report of the commissioners of assessment at the special term, and in determining the questions of fact and law then presented, and in confirming that report, acted as the supreme court of the constitution, and not as a subordinate tribunal. That the appeal authorized by the act of 1854 was to the same court in general term; and that the final order of affirmance, the subject of this appeal, was made by the supreme court having "jurisdiction in law and equity," and not otherwise. That the appellants are consequently entitled to a hearing in this court, unless the right of appeal is taken away by the statute under which the proceedings originated; which declares "that the report of the commissioners, when confirmed by the supreme court, shall be final and conclusive upon all the parties interested, and upon all other persons whomsoever.'
This presents the second, and only remaining question discussed upon the argument. The authorities then cited by the counsel for the appellants fully establish the position that, in respect to inferior jurisdictions, the right to *Page 412 
review their proceedings cannot be taken away without an unequivocal declaration to that effect by the legislature. They show that the superior courts in England, and in this state, have disregarded the strongest intimations of the legislative will, unless they came up to this standard; and the law may be considered as settled, that language as emphatic as that contained in this statute will not deprive a party of the right of review. (2 Keeble's R., 43; 2 Burr., 1040; 2 Caine's R.,
179, 181.) In justification of this strictness, it has been alleged that administrative and judicial, or quasi judicial powers, are frequently delegated to men without legal experience, who may err through ignorance, or abuse their trust from interested motives. It has, therefore, been deemed indispensable to the security of the citizen, that a superintending power should exist somewhere, over inferior courts and officers, to restrain irregularities, and to correct errors of law and, above all, errors of jurisdiction.
These are cogent reasons in favor of the power of review and control, and would be conclusive if, as the appellants insist, the order appealed from had proceeded from a subordinate court. The question, however, here is, whether they apply to the decisions of the supreme court; the tribunal which is made by the constitution, what the king's bench is in England, the conservator of the rights of the citizen, by supervising and keeping within their assigned limits all inferior jurisdictions whatever. The presumption certainly would be, that a court, whose peculiar office was to supervise others, would not transcend its own jurisdiction; while the parties interested would have the judgment of men selected for their experience and legal knowledge, acting in view of a high official responsibility, with reference to what was due to their position, to the public, and to the opinion of an intelligent profession. The language of the statute in reference to a court clothed with such authority would be senseless, if not construed as it reads; that in cases of assessment for opening and widening streets, their orders and *Page 413 
judgments should be "final and conclusive upon all persons interested, whomsoever." Such is the case before us. The assessment made, as we are informed, exceeds five hundred thousand dollars, and directly affects the interest of at least three thousand persons. That all should have been satisfied was not to be expected. But those who felt themselves aggrieved have had one or more hearings before the commissioners, another before the supreme court at special term, and a review of the whole proceeding before a full bench at the general term of the same court. In a great majority of these street cases, the controversy does not originate in a difference of views as to the laws of property or those affecting the jurisdiction of the court, but in reference to the apportionment of the burden imposed in carrying out the improvement. These last present questions of fact almost exclusively, which cannot be reviewed here; and if they could, the chances of a correct decision would not be increased by a farther departure from the source of the evidence.
There is nothing, therefore, in the character of the court pronouncing the judgment appealed from, or in the nature of the proceeding itself, that indicates improvidence or inattention to the rights of parties by the legislature in declaring that the decision of the supreme court should be "final and conclusive." And there is nothing in either consideration to justify us in departing from the plain import of the provision, in order to sustain our own jurisdiction. We have accordingly held (1Kern., 276) that the right of review was taken away by a provision of a similar character, making the decision of the supreme court final as to appraisments under the general railroad act.
The appeal must be dismissed.
DENIO, J., being interested, took no part in the decision.
Appeal dismissed. *Page 414 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 415