# SUPREME COURT.

## IN THE MATTER OF WIDENING BROADWAY IN THE CITY OF NEW YORK.

The act of 1871, ( *Sess Laws*, 1871, *ch.* 57), directing inquiry into the report of the old commissioners appointed to widen Broadway, respecting benefits and awards, &c., and authorizing the supreme court, on good cause shown, to open the order of confirmation and to cause the question of valuation to be re-examined &c., *is constitutional*. It does not impair the obligation of contract, nor deprive a person of property, without due process of law.

An objection was taken to the order of the special term, from which this appeal was taken, that the special term found the assessments and awards unfair, &c., as to the city, and made no findings as to their claims in respect to other persons, and should, at the most have set aside the proceedings only as to the city.

But *held*, that in vacating the order generally and referring the matter to new commissioners, the court followed the direction of said act:

*Held*, also that assuming that it were within the discretion of the special term to vacate the order and confirmation in part, still there may have been and probably was, good reason for vacating it altogether. This court ought not to review the order in that respect.

*New York, General Term, January,* 1872.

*Before* INGRAHAM, BARNARD & LEARNED, *JJ.*

THIS is an appeal by J. Watts Depeyster, from an order made at special term on the 3d of April, 1871, setting aside the order of confirmation in these proceedings entered on the 28th of December, 1870, and appointing new commissioners. The special term found that there had been error, mistake, irregularity and illegal acts in these proceedings and that the assessments for benefits and the awards for damages had been unfair, unjust, inequitable and oppressive as respected the city of New York.

*By the court,* LEARNED, J.—There is no occasion for the general term to re-examine at any length the conclusions of

the special term on this question of fact.   The learned judge
who held that term has found upon it, and the evidence ap-
pears to be ample to sustain his views, indeed, the points
raised here by the appellant seem to be in substance only
two.    The first is that, as the court below found the assess-
ments and awards unfair, &c., as to the city, and made no
findings as to their claims in respect to other persons, he
should, at the most, have set aside the proceedings only as to
the city.    But in vacating the order generally, and referring
the matter to new commissioners, the court seems to have
followed the direction of the statute (*Section* 4, *chap.* 57,
*Sess. Laws*, 1871.).    And now, assuming that it were within
the discretion of the special term to vacate the order and
confirmation in part, still there may have been and we are
inclined to think, that there was good reason for vacating it
altogether.    We ought not to review the order in that
respect.

The second point is undoubtedly the important one.    The
appellant insists that the act of the legislature (*Sess Laws*,
1871, *chap.* 57), by authority of which this motion was made
and this order was granted was unconstitutional—*first*, as
impairing the obligation of contract; *second*, as depriving a
person of property without due process of law.    In raising
this question it is important to consider what the order was
which was set aside.    The act of 1869, chapter 890, author-
izes the commissioners of the Central Park, to lay out that
part of Broadway, between thirty-fourth and fifty-ninth
streets, and to locate and establish the easterly and westerly
lines thereof, so that the street be one hundred feet wide,
and also to widen certain other parts of the street.    They
are to file certificates and maps defining the lines and naming
the boundaries of this part of Broadway, and the filing of
such certificates and maps is to be final and conclusive as to
the extent and boundaries of said improvements.    After the
filing of these certificates the corporation counsel, in behalf of
the city, is directed to acquire title to the land required,

and for that purpose, to apply to the supreme court at special term, for the appointment of three commissioners of estimate and assessment. These commissioners are to make an assessment for the loss and damage, and of the benefit and advantage of the persons interested in the lands required for and affected by said proceedings. The act further provides, that all acts now in force relative to opening, &c., streets and avenues shall apply to all proceedings under this act, so far as the same are applicable.

There has been some disagreement on the question whether in confirming reports of commissioners, in such cases the judge or judges acted as a court or in a *quasi* judicial character. But the language of the constitution, article 4, section 7, requiring that the commissioners shall be appointed by a court of record, would seem to put the matter beyond dispute, and with this accords the case of Canal and Walker streets (12 *N. Y.*, 406). I am aware that it has been held in this court (*Brown, extension*, 12 *How.*, 97), that an appeal does not lie to the general term from an order of the special term, confirming the report of the commissioners. But if this were an open question here, I should think, that the court of appeals had settled the doctrine otherwise. The case of Canal and Walker streets was dismissed on appeal to the court of appeals from an order of the general term, made by appeal from the special term on the ground that the decision by the general term was under the statute final and conclusive. This seems to me to be a recognition of the principle, that the order could be appealed to the general term.

The language of Judge DAVIES in *King* agt. *Mayor*, (36 *N. Y.*, 182), is decided on this point. In case of the *Rensselaer and Saratoga Railroad Company* agt. *Davis*, (43 *N. Y.*, 137), it was held that an appeal lay to the general term and also to the court of appeals, from an order condemning lands under the railroad act. It is true that the order there appealed from was practically an order condemning the lands, and not simply an order for appointment of commissioners;

that is, the court of appeals held, that the special term had jurisdiction to consider whether the lands were necessary for the corporate purposes of the railroad ; while in the case now under consideration the analogous point seems to have been determined by the commissioners of the Central Park. While, therefore, my own view is that the order of confirmation was appealable, I prefer to examine the question on a different ground.

Supposing, then, that the order of confirmation, when made, was not appealable, can the court entertain a motion to vacate it for error, mistake, irregularity or illegality ? Assuming that the language of the former statute as to opening streets, applies to the proceedings under this act, the order of the court is said to be "final and conclusive." The meaning of these words can only be, that no appeal lies to a higher court. So they are construed in 12 *N. Y.*, 406. I do not see that these words give to the order of confirmation, any greater validity or more sacred character than any judgment of the supreme court, which has been affirmed on appeal to the court of appeals, or in respect to which the time for appealing has expired. Every such judgment is final and conclusive upon all persons interested whatsoever.

This order of confirmation, as I have already shown, is an order of the supreme court, not of any *quasi* judicial tribunal possessing limited powers. It is a final order, made in a special proceeding. The court has appointed certain officers to ascertain and report upon certain disputed facts, viz., the value of the property taken and the benefit accruing. These officers have reported to the court, and the court has confirmed the report. In what way does this order of confirmation differ as to its finality from a judgment of the same court entered on the report of commissioners for interest in partition ? And it is to be observed, that the commissioners were not to decide what land should be taken. That had already been decided by the Central Park commissioners.

This proceeding might be compared to an action on account *quantum valebat.* These commissioners are to ascertain the value of property taken and of benefits conferred.

It is insisted by the appellant, that the award of the commissioners, as compared with the prior proceedings, constituted a contract and is within the protection of the constitution of the United States. But what is the contract, if there be one? It is on the part of the owner of the land to sell, and on the part of the city to buy certain land at such price as the same is worth. This, as it appears to me, is the utmost effect that can be given to the proceeding, assuming that it is a contract.

There is no absolute price fixed between the parties as to this supposed contract, but the compensation is to be the actual value of the premises. To ascertain that value commissioners are appointed. They make a report which the court confirms. Is there any principle of law which prevents the court on good cause, shown on proof, for instance, of error, injustice, and the like, from opening the question as to the actual value, and having it tried again before another and similar commission? It is not necessary to inquire whether without the act of 1871 the court could have done this, for the question is simply as to the constitutionality of that act. And looking upon the action of these commissioners as a proceeding to inquire what compensation the owners shall have for their property, I do not see any constitutional objection that should prevent the legislature from authorizing the court (if it have not already the power), on good cause shown, to open the question, and cause a reexamination of the question of value.

And here, it seems to me, is the difference between the present case and that of *The People* agt. *Supervisors*, (4 *Barb*. 64), and other similar cases; in that case the legislature, by a repeal of the act, attempted to annul what is called the contract between the owners of lands taken for public purposes, and the commissioners who had so taken it, and the

act of the legislature was held unconstitutional. In the present case the legislature has passed no act of repeal, no act attempting to annul the so-called contract, by which the city purchases and the owners sell the land taken. But, on the contrary, affirming the contract, the legislature only provides for another inquiry as to the value of the land. Nor do the legislature even enact that another inquiry shall take place. They only authorize the court, on proof that the former inquiry was illegal, unjust, &c., to have a new inquiry made as to the question of fact—namely, the question of value. The case of the *Baltimore and Susquehanna Railroad Company* agt. *Nesbit*, (10 *How.*, 395,) is closely analogous. In that case, an act of the legislature of Maryland directed a court to set aside an injunction condemning lands, and to cause an injunction *de novo* to be taken. The former inquisition had been ratified and confirmed by the court, and the act of the legislature was peremptory. Yet it was held to be constitutional. A distinction may be made between that case and the present in this respect :—In that case the title to the land passed on payment or tender of this valuation. In the present, according to the language of the act of 1813, the title passes on the final confirmation of the report. Still I do not think that this difference in the language of the acts is very substantial, when we consider the provision of the United States' constitution, forbidding the taking of private property for public use without just compensation.

In the view of the case which I have thus taken, the act of the legislature authorizing this court, on good cause shown to open the order of confirmation, and to cause the question ot valuation to be re-examined, was constitutional. I have not referred to many authorities, because they are so fully and ably set forth in the opinion of the learned judge whose order is appealed from ; but I have simply stated the principle which I supposed governed the case.

The order should be affirmed.