'Learned, J.
This is a motion founded on a petition of the board of commissioners of Washington Park, asking leave to vacate, set aside and. abandon certain proceedings commenced by them and now pending in this court, and especially the order appointing commissioners of appraisal, and also to withdraw the petition on which that order was granted. It was argued as being substantially a motion for leave to discontinue. The owners of certain property who had been served with a copy of this petition and notice of its presentation, now appear and oppose.
The facts are as follows: About May ÍS, 1873, these owners were served with a copy of a petition on behalf of the board of commissioners of Washington Park, *149 and notice of its presentation. This petition, after setting forth the organization of the board under a certain act, stated that at a meeting of said board duly convened and organized, said board, by a vote of two-thirds of all the members, taken by yeas and nays, and duly entered on the minutes, deem it necessary to purchase or take certain land therein described, belonging to these owners severally, for the purpose of laying out, &c., said park; that they were unable to agree with the owners as to the price ; that it was their intention, in good faith, to acquire title to said real estate; that in their judgment it was acquired for the purpose aforesaid ; that they had authority to take the land ; that a map of the land had been made by the city surveyor as a part of the proceedings, and had been filed in the clerk’s office. On May 27, 1873, the day when the petition was to be presented, the said board of commissioners appeared in court, and the owners appeared. Thereupon, an order was then made by this court appointing commissioners of appraisal.
The commissioners of appraisal afterwards, at the appointed time, met and proceeded to appraise the property. The park commissioners and the owners appeared before them; witnesses were sworn, and the matter was proceeded with from time to time. The case of each several owner was taken up successively and determined. The commissioners of appraisal announced and made their determination in each case, the last having been made July 22, 1873, and nothing remained for them to do but the formal drawing up and filing of their report; and they adjourned sine die, except for that purpose.
On July 28, when the commissioners of appraisal were ready to make and file their report, the park commissioners, upon the petition which is now before the court, obtained an ex parte order staying the commissioners of appraisal from filing their report and staying *150 the owners from taking any proceedings. This has. been modified so as to permit the owners now to move for the filing of the report and for the confirmation thereof.
The petition states that the board of park commissioners, at a meeting on July,S8¡ 1873, by a vote of two-thirds, taken by yeas and nays, and entered on the minutes, resolved that it was necessary to vacate, set aside and abandon, these proceedings, and to ask an order to that effect on the ground, among others, that the awards were excessive, and that lands could be acquired elsewhere more economically.
. A certified copy of the ressolution at that meeting was read on the hearing. From this'it appears that a report was made to the meeeting stating the amount of each award, and that the vote of the park commissioners was simply that the awards be rejected, and that the attorney of the board take all necessary steps, for closing and discontinuing said proceedings! There does not appear to have been any vote that the awards were excessive, or that lands could be obtained elsewhere.
From the vote to reject awards, they would seem to be considered simply as proposals on the part of the owners which were to be accepted or rejected as should be thought best by the commissioners.
First. It is not ‘claimed by the petitioners that this is the mode to review the awards. The remedy, if the awards are excessive, is by confirmation and appeal. The alleged excessiveness of the award is not mentioned in the vote, and, at any rate, it is now only suggested as the motive which influenced the board. It is not pretended that there is any evidence now before the court that the awards are excessive. The report itself would need to be on file before the question, whether or not its awards were excessive, could be raised. But the position of the board of commissioners is that they *151 have the absolute right to discontinue these proceedings, and that in fact, the present application is rather out of respect to the court, than from strict necessity.
Second. Notice, however, of this motion has been given to the owners, and they appear to oppose. The ultimate decision, therefore, wall be binding on the parties, hence, it becomes, very important.
Third. It is argued by the petitioners that the plaintiff in an action, or the petitioner in special proceedings may (generally at least) discontinue. Why. may not they in this case? Now, this marked distinction is to be observed. In most cases, actions and special proceedings are for the enforcement of some contract previously existing, or for the redress of some wrong previously done. But in these proceedings there is, at some point, in their progi'ess, a new right created between parties, that is, .the right of compulsory purchase of certain definite property. Now, whenever that right is created, it would seem that, then, both parties must be bound by it.
Fourth. When, then, is this right created, that is, the right of the park commissioners to obtain these specified lands of these owners. • Now, if A and B make a contract, by which A is to sell to B certain lands, their rights are then fixed. It is true that A may not be obliged to convey to B until B shall have paid him the price. But the contract is binding on both, and must be binding on both, or on neither.
.It is sometimes said that proceedings like these create a statutory contract. That .expression is not to be taken literally, but by way of analogy ; because a contract implies the agreement of two parties which does not exist here. Yet there must be something in the nature of a contract by compliance with which, that is, by payment of the money, the title passes to the commissioners.
It is the right of the State to apply to public use *152 any property within its control, whenever such property is necessary for public use.
That right the State in certain cases confers on others, who are in some sense acting for the public good. But there must always be some authority to decide that the property is necessary for public purposes. In some cases the State decides the question. In other cases it puts the decision in other hands. But evidently that decision must somewhere be made.
Then when it has been decided that certain property is necessary for public purposes, the constitution interferes and says that the property shall not be taken without making compensation. It then remains to-ascertain what is the proper' compensation for the property which it has thus been decided is necessary for public purposes.
There are, then, in every such proceeding two-things. First, a decision by some authority clothed with that right, that the property is necessary for public purposes. Next, when that has been settled, an ascertaining of what compensation shall be paid. The two are distinct, although they may be vested in the same body.
How, in the case of railroads (and the park commissioners’ authority is through the same act), it is not the right of the company to decide that certain specified lands are necessary. The company is to apply to the court, upon notice to the owner. The court is to hear evidence and decide the question ; and an appeal lies to the highest court from that decision; for that decision is the vital matter in the whole proceeding. It is that which determines whether or not, in the case-proposed, the taking of the lands in question by the applicant is necessary for public purposes. That decision, when finally determined, is conclusive on the owner of the land. It must on all sound principles be conclusive on the applicant. The applicant has brought *153 tlie owner into court on an allegation, in substance, that it is necessary for the public purposes, managed by the applicant, that this property of the owner should be taken; and the court has decided this in the applicant’s favor. That question is ended. The remainder of the proceedings is only to determine what is the value of the property. But the decision has settled that the owner shall have the value, and the applicant shall have the land. “The decision of the special term was a fixed adjudication of the right of the respondent to a condemnation of the lands under the statute. The subsequent proceedings relate only to the assessment of damages, and the review by the court of the action of the commissioners.” (Rensselaer and Saratoga R. R. Co. v. Davis, 43 N. Y., 137).
In the present case, the petition presented to the court as the basis of these proceedings, stated that the park commissioners deemed it necessary to purchase or take these specific parcels of ground 'for the purposes of the park; that in good faith they intended to acquire title thereto; and that these parcels of ground were required for these purposes. If it had appeared that these. parcels were not necessary, or were not required ; if, for instance, it had appeared that these parcels were not in the neighborhood of the park, and could not be used for the purposes of the park, the court would undoubtedly have decided against the application. On the contrary, it was decided that these parcels were necessary and were required. Such a decision was necessarily involved in going to appoint commissioners of appraisal.
Suppose that the petition had stated that the lands were necessary for park purposes, provided the commissioners should be satisfied with the amount to be awarded by the appraisers ; could the court have granted the order 1 Clearly not; for the necessity of taking the lands was to be determined at that time. *154 It was not to depend on the subsequent election of the owners or of the commissioners.
It appears to me, then, that the order of May 29,1873, determined the rights of the respective parties; the park commissioners to a quasi purchase, and the owners to a. quasi sale of these parcels of land, at the value thereof to be determined in a mode specified by law.
This question has been discussed in English courts, and the principle above stated has been there affirmed in the strongest manner. It is to be noticed that in similar proceedings in England, the party (usually a railroad company) desiring to acquire title gives notice to the owner that such lands are required, and that if within a certain time the owner does not treat, or if the-parties cannot agree, then that the company will proceed to have the value ascertained by a jury. This ascertaining of value by a jury seems to be done by the issuing of the company’s warrant to the sheriff or summoning officer.
In the case of King v. Hungerford Market Co., 4 Barn. & A., 327, the company gave the notice, and afterwards neglected and refused to issue their warrant. ' A motion was made for a mandamus to compel them to issue their warrant. And it- was granted. Denman, Ch. J., said: “If they are not bound by their notice, then it follows that after giving it they are free during the long term of three years to take the property or not, at their discretion; and the owner is at their mercy during that time.” Parker, J.,'said: “Thenotice ought to be as binding on them as on the owner.”
In Stone v. Commercial R. Co., 4 Mylne & C., 122, the court said: “The moment that the company have given the notice, the relative situation of vendors and purchasers is so instituted between the parties, and the value of the property, if the parties cannot agree, is to be ascertained by reference to a jury.”
In Tawney v. Lynn & Ely R. Co., Law Journal *155 Rep. N. S., vol. 16, p. 282, a company gave notice that they should require twenty perches of plaintiff’s land. Subsequently they gave notice that they should require only one perch, and countermanded the former notice. It was held that the first notice was binding and could not be withdrawn, and the company were enjoined from proceeding under the second.
A still stronger case is that of Walker v. Eastern Counties R. Co., 6 Hare, 594. In that case the company gave the usual notice to the owner, and after-wards wrote to him that they did not need the land. He brought an action for specific performance. It was said by Vice-Chancellor Wigkam: : “ The notice had the effect of making a contract between them for the purchase of the plaintiff’s houses. It is clear that the company could not, after that notice, have retired from it. After that notice the only thing to be ascertained was the amount of the purchase money ; and as the mode of ascertaining that is prescribed by statute, it is in contemplation of law certain, although it remains to ' be ascertained.....The contract is a contract to purchase on the terms prescribed by the act of parliament, and those terms the court has- the means of ascertaining, so as to get at the price.” Specific performance was decreed.
These decisions appear to me to be sound and just.
On the other side, it is urged that the payment of the value of the land must be made before the owner can be divested of his title.
There is no occasion to dispute that principle. Whenever a contract for the sale of lands is made, the purchaser must pay the consideration before he obtains his deed, yet the contract is binding before it has been fulfilled.
• But the question here is, when is that quasi contract established between the parties, which enables the commissioners on payment of the price to procure the title. *156 In England we see it is the giving of that notice, because under the system in that country it is not required that any court should decide on the necessity of taking' the land. But it would be an outrage on the rights of. property,.!!, in the exercise of this right of eminent domain, the commissioners having obtained a decision that this property was needed, to which decision the owner was obliged to submit; having thus placed him in the position of a man who had contracted to sell his property, should then, even after the value had been determined, have the-right to break off the bargain.
The case of Baltimore & Indianapolis Railroad Company v. Nesbit, 10 How. U. S., 395, is not in conflict with these views. The decision there was that the legislature might direct the court to set aside the inquisition, and direct an inquisition ele novo. That was merely the having a new assessment of damages. It did not disturb the quasi contract that the railroad company should take, and the owner should sell the lands. It is important to notice in that case also, that after the inquisition had been made the railroad company did not offer the money to the owner for the space of seven years, nor until after the legislature had directed the court to setaside the inquisition-and to issue a new one. Then the company claimed the right to avail themselves of the old inquisition. Their own delay had been a virtual waiver on their part of the inquisition, and it was too late for the company now to i n sist on its validity. In our own railroad law the report of the commissioners may be appealed from and á new award had. So, in the Matter of Widening Broadway, 61 Barb., 483; affirmed in court of appeals, 49 N. Y., 150, it was held that the legislature might authorize the court to open an award for fraud, and to have a new award made ; for the appointment of commissioners of appraisal is merely to ascertain the value of the land, not to decide whether it shall be taken
*157 I am referred to a case in this district, not reported, and in which I have seen no opinion. Judging from the brief of counsel, the award was fraudulent. The court refused to confirm it.
There is another point which is not without weight, although I do not deem it necessary to pass upon it. That is, that there is nothing in the act which expressly authorizes the park commissioners to change the lines of the park after having once decided upon them, section 23 of the railroad act not being made applicable to the park commissioners.
When parties are endeavoring to make a bargain, it is very proper for one to make a proposal, and to give the other an opportunity to accept or reject. But that is not the nature of this present proceeding. The. award is not a proposal on the part of the owners, any more than it is a proposal on the part of the park commissioners. The owners could not vote to reject the awards ; why should the park commissioners have that privilege ? The very ground on which the proceeding is initiated is that the parties cannot agree; and the object of appointing appraisers is to fix a sum on which the parties must agree.
When the court had decided that it was necessary to take this property, the owners had a right to depend on the decision. Practically they were prevented, after that decision, from making any sales, from leasing or improving. They were bound as effectually as if they had entered into a written contract for a future conveyance to the park commissioners. Indeed they were bound more effectually, because any purchaser takes subject to these proceedings. In justice and in good faith, therefore, the obligation should be mutual. The exercise of the right of eminent domain is harsh at the best. No unnecessary injustice should be added.
The motion for leave to abandon the proceedings *158 and to set aside the order of May 27,1873, and to withdraw the petition then filed, is denied.
The motion on the part of the owners to confirm the report cannot be regularly heard until the report shall be filed. It must, therefore, be denied, with leave to renew; or it may stand over to some day when the report shall have been filed. , .