## In the Matter of THE KINGSBRIDGE ROAD.

*Appeal — from order of confirmation in street opening proceedings — when may be taken to General Term — Notice of — upon whom served — chap. 565 of 1865 — chap. 86 of 1813 — chap. 270 of 1854.*

An appeal may be taken to the General Term of the Supreme Court, from an order confirming the report of commissioners in proceedings had relative to the opening of streets in the city of New York, under chapter 565 of the Laws of 1865, which adopts the provisions of chapter 86 of the Laws of 1813.

Whether the provisions of the act of 1813, that the report of the commissioners, when confirmed, should be final and conclusive, considered under the circumstance that such order of confirmation was then made by a court consisting of three judges, would prevent an appeal to the General Term from an order which may now be made by a single judge, *quære.*

Chapter 270 of the Laws of 1854, authorizes an appeal to the General Term in such cases; but no appeal lies from the decision of the General Term to the Court of Appeals.

In such proceedings the municipal corporation which seeks to acquire the title *in invitum* to lands for a public highway, and to make assessments upon parties benefited, etc., is, in a legal sense, the adverse party in respect to all persons affected by the proceedings, and the several persons whose property is taken or assessed, are not, in a legal sense, " adverse parties " to each other, and service of a notice of appeal on the clerk of the court and the corporation counsel in such cases is sufficient.

Motion to dismiss the appeal of James Lynch from the order of the Special Term, confirming the report of commissioners of estimate and assessment, made in an application of the department of public parks, for and in behalf of the mayor, aldermen, and commonalty of the city of New York, relative to the opening of Kingsbridge road northwardly from the southerly line of One Hundred and Fifty-fifth street to the Harlem river, as laid out by the commissioners of the Central park of the city of New York.

*Granville P. Hawes, Geo. H. Adams, James C. Carter, Gratz Nathan, Kitchell & Jelliffe,* and others, for the motion.

*James A. Deering* and *A. H. Purdy,* opposed.

Davis, P. J.:

This motion is made upon two grounds: First, that the order is not appealable; second, that notice of appeal has not been given

to all the parties interested in the confirmation of the report. The notice of appeal was served upon the clerk of the court, and upon the corporation counsel, by whom, as representing the mayor, aldermen, etc., and the commissioners of the Central park, the proceedings to acquire the lands and open the street are conducted, and the motion of confirmation was made. In our opinion this service was regular and sufficient.

The municipal corporation which is seeking by proceedings under the law, to acquire title *in invitum* to lands for a public highway, and to make assessments upon parties benefited, and compensation to parties injured, is, in a legal sense, the adverse party in respect of all persons affected by the proceedings ; and the several persons whose property is taken or assessed are not, in a legal sense, " adverse parties " to each other. They have a common adversary in a controversy in, which they may have divers interests, which may, in some cases, be hostile to each other in practical effects and results, yet they have no adjudications as between themselves for or against each other, and so far as they are severally interested in maintaining the adjudication which the city has obtained against them all, the corporation must be regarded as their representative in a contest between it and the persons who deem themselves prejudiced by such adjudication.

The first point is one of graver importance. The proceedings in this case were taken under the provisions of chapter 565 of the laws of 1865. (Sess. Laws of 1865, 1136.) That act adopts and applies, so far as they are not inconsistent with its own provisions, the several acts and the proceedings thereunder, relating to the opening of streets, roads and public squares, then in force in the city of New York. All parties on this motion have acted upon the assumption that the provision of the act of 1813, declaring the effect of the order of confirmation, is in full force in this case. Section 178 of the act of 1813, provides that the commissioners of estimate and assessment shall make a report of their proceedings " to the Supreme Court of Judicature," and that " such report, when confirmed by the said court, shall be final and conclusive, as well upon the said mayor, aldermen and commonalty of the city of New York, as upon the owners, lessees, persons and parties interested in, and entitled to the lands, tenements, heredita-

ments and premises mentioned in the said report, and upon all other persons whomsoever."

It is upon the effect of this provision, considered of course in the light of subsequent legislation and existing circumstances, that the question whether an appeal from the order of confirmation made by the Special Term, can be taken to the General Term of the Supreme Court. The power to make such *final* and *conclusive* order of confirmation, was conferred by the act of 1813, upon the Supreme Court of Judicature. That court then consisted of a single body, composed of three judges, who then held a single term, comprising within itself all the powers, so far as they then existed, which are now distributed amongst the several branches and terms of the same court. It was at that term (which, for the sake of distinction, we may now call a General Term), to which the power to make the final and conclusive order was given.

There is no doubt from the language used by the act, that the intention was to preclude an appeal from such an order of confirmation from the Supreme Court to the then appellate tribunal; and there seems just as little, that the intention was to give the characteristic of finality and conclusiveness to the order by a term of the Supreme Court having as well the original as the ultimate authority of that court.

If the powers of the Supreme Court had been subdivided as now, it may well be questioned whether the order of a single judge sitting at Special Term and disposing of interests and rights so vast and complicated as those involved in some of this class of cases, would have been made final and conclusive upon all parties and persons. But the changes in the courts were not anticipated, and language was used, therefore, which then fitted the orders of a General Term only, but which is now to be fitted to the orders of a Special Term held by a single judge. But this fact is not so much an argument against the application of the language of the act of 1813 to the orders of Special Terms, as in favor of such construction of subsequent legislation touching appeals from orders as shall embrace those made in this class of cases. If the Special Term of the Supreme Court were an inferior tribunal, language as emphatic as that contained in the statute of 1813 would not deprive a party of the right of review. (*Matter of*

*Canal and Walker Streets*, 12 N. Y., 406; 2 Keble, 43; 2 Burr., 1040; *Lawton* v. *Commissioners*, 2 Caines, 179, 181.)

In the Supreme Court " the right of review, being a fundamental one, is always deemed to exist, unless the intent to destroy it is expressed with irresistible clearness." (Per HILL, *arguendo*, in *Matter of Canal Street*, 12 N. Y., 408; citing 2 Cranch, 390, MARSHALL, C. J.; *Lawton* v. *Commissioners*, 2 Caines, 179; *Rex* v. *Commissioners*, 2 Keble, 43; *Rex* v. *Morely*, 2 Burr., 1040, 1042; 3 Hill, 562, COWEN, J.; *Starr* v. *Trustees*, 6 Wend., 564.) When the changes in the organization of the Supreme Court became such that a Special Term could entertain motions for confirmation under the act of 1813, it would necessarily have followed that, had not the Special Term been, so far as its powers extended, a branch of the Supreme Court itself, clothed with co-ordinate authority, the principle of law above referred to would have kept alive the powers of review in the General Term, notwithstanding the act of 1813 declares the order when made to be final and conclusive.

But the conferring on the Special Term of power to make the order, under the act of 1813, undoubtedly gave to the order of that court the effect declared by the act. Hence, to enable it to be reviewed, required legislation which should, *pro tanto*, operate to modify the effect of the order. The act of 1854 seems to us to have been enacted expressly to accomplish such a purpose — that is, to subject orders of the Special Terms to review in this and other classes of cases which might not be embraced in the more general provisions of the Code.

The first section of the act of 1854 provides that "an appeal may be taken to the General Term of the Supreme Court, or the Superior Court, or Court of Common Pleas of the City of New York, from any judgment, order or final determination made at a Special Term of either of said courts, in any special proceedings therein." (Session Laws 1854, chap. 270, p. 592.)

There seems to us no propriety in frittering away the force of this statute by a judicial incorporation of exceptions which the legislature did not see fit to make.

The statute was obviously made for the express purpose of permitting a review of orders in all special proceedings, when made

in the Special Term, and there seems to be greater reason for applying it to the case of orders which could only have been made by a General Term, when language in respect of them was used by the legislature which made them not appealable from the latter court. It is to be observed that the act of 1854 gives no appeal except to the General Term, and the right of review terminates under it, in this kind of cases, precisely where the order which was to be final and conclusive was, by the act of 1813, to be made. So that, under the act of 1813, *the order of the Supreme Court* is still final and conclusive, precisely as originally contemplated.

But we think the question of the application of the act of 1854 to such cases ought to be regarded as authoritatively settled. In *The Matter of Canal and Walker Streets* (above cited), the order of confirmation was made at a Special Term in *December*, 1853; an appeal was taken, and, in *September*, 1854, the General Term affirmed the order. From the latter order an appeal was taken to the Court of Appeals, and a motion was made in the last named court to dismiss that appeal.

The act of 1854 was passed, April 15, 1854, pending the appeal in the Supreme Court, from the Special Term order of December, 1853. The act contains this provision : " And all appeals heretofore had or taken, and undetermined in special proceedings, shall be as valid and effectual as though had or taken under the provisions of this act." These facts and dates show, almost to a moral certainty, that the act of 1854 was passed expressly to meet and make valid the appeal then pending in the Canal street case, which was one of great importance.

The motion to dismiss came on speedily in the Court of Appeals, and that court, as stated in the head note of Mr. Kernan, held that, " by virtue of chapter 270 of the Laws of 1854, an appeal lies to the Supreme Court at General Term, from an order made by the same court at Special Term, confirming the report of the commissioners." GARDINER, C. J., in delivering the opinion of the court, held that the act of 1854 gave an appeal to the General Term of the Supreme Court, and that, " independently of that statute, the General Term acquired no jurisdiction of the proceedings." (12 N. Y., 409.) He exploded the idea that in exercising the powers conferred by the statute of 1813, the court acted as " a subordinate

tribunal of special and limited jurisdiction, to be exercised by those who were, *ex officio*, judges of that court," and held that the order of the Special Term was *an order of the Supreme Court*, to which the act of 1854 had application; and he further held, in substance, that to the *order of the General Term*, in such case, the language of the statute of 1813, declaring it "final and conclusive," still applied, so that no appeal would lie therefrom to the Court of Appeals, inasmuch as the act of 1854 gave an appeal *only* to the General Term of the Supreme Court. This contemporaneous construction of the act of 1854, ought, as it seems to us, to have been regarded as settling the right of appeal in this class of cases, but it seems to have been held otherwise by the General Term of the first district *In re Bowery* (12 How., 97), in which case the appeal was dismissed, and in *The matter of Sixty-fifth Street* (23 How., 256), the same view seems to have been expressed.

But in the last case in this court (*Matter of Riverside Park*, 61 Barb., 40), the question underwent careful review, with all the former rulings in consideration, and this court held that such an order of confirmation was appealable under the act of 1854. This last decision, we think, gives its legitimate effect to the statute of 1854. It is attacked by counsel because some of the authorities cited are not precisely analogous in principle or in facts. It is enough, however, to say that it has the cases of *The matter of Canal and Walker Streets* (*ubi supra*), and *King* v. *The Mayor* (36 N. Y., 190), to uphold it, and no authority in the Court of Appeals has been cited which conflicts with it. The case of *King* v. *The Mayor* is directly in point. In that case the report of the commissioners was confirmed at Special Term; an appeal from the order to the General Term was dismissed, and a writ of error was brought to the Court of Appeals from the order of dismissal. The opinion of the court, pronounced by DAVIES, C. J., in which all the judges concurred, says: "*We have no doubt that the order made in this matter was appealable to the General Term of the Supreme Court*, and that the order or judgment which the statute declares to be final and conclusive, is that which the Supreme Court *finally* makes in the matter. Such has been the uniform practice in matters of this kind. * * * *It was the duty of the General Term, therefore, to have heard the appeal, and not to have dismissed it.* If that order had been brought to this

court by *appeal*, we should have reversed it on this ground alone, upon the authority of the cases of *The People* v. *New York Central Railroad Company* (29 N. Y., 418), and *Bank of Geneva* v. *Reynolds* (33 id., 160), and other cases in which the rule there laid down has been followed."

Thus it will be seen that the court not only distinctly held that the order was appealable, but that an order of the General Term dismissing the appeal on the ground of supposed want of power to entertain it, would have been reversed on the ground of error in such dismissal, if the correct practice of an appeal from the order had been pursued; but as *a writ of error* was not an appropriate remedy, that process was dismissed.

The views expressed by the learned chief justice have additional force, from the fact that he had himself filled the office of corporation counsel, and had had opportunity to become familiar with the practice in such cases.    It is urged that these cases are shaken by subsequent decisions of the Court of Appeals, and *The Mayor, etc.*, v. *Erben* (38 N. Y., 305), and *The Matter of the Commissioners of Central Park* (50 id , 493), are cited as sustaining that view.

There are several reasons why *The Mayor* v. *Erben* is not an authority to that effect: First. No such question was involved in the case, it being an action to recover on overpayment on an award of damages, in which the conclusiveness of the report as confirmed only arose collaterally, and no question whether the appeal could have been taken was in any wise involved.    Second. The opinion of Hunt, C. J., published in 38 New York (page 305), was the dissenting opinion, and not that of the court; and the decision of the court was directly contrary to the views of Judge Hunt, and the publication of the opinion as that of the court was a blunder of the reporter.    [This correction is made by a foot note in the last edition of the volume, at page 311.]    And lastly, the remark of Hunt, C. J., was obviously a hasty one, having in view nothing further than the right to look behind an order of confirmation, in such a case as that under his consideration.

*The Matter of the Commissioners of Central Park* (50 N. Y., 493), involved nothing but the question whether the Code (as amended), gave an appeal to the Court of Appeals, from an order of the General Term confirming the report of commissioners.

From the case, as reported, it would seem that the motion for confirmation was made in the *first instance* at General Term, as doubtless it may be, unless directed by the court, by some general or special rule, to be heard at Special Term; and the court held that the general provisions of the Code relating to appeals to the Court of Appeals, did not authorize an appeal from an order made under section 178, chapter 86 of the Laws of 1813, and thereby declared to be final and conclusive. As the statute of 1854 had no application whatever to the Court of Appeals, it was neither considered nor cited, nor in any wise referred to by counsel, nor by the court; but the cases above cited (12 N. Y., 406 and 36 id., 182), are cited approvingly, and no suggestion is made that the ruling in those cases, that an appeal would lie from the Special to the General Term of the Supreme Court, is open to animadversion. The case can only be said to hold that the questions embraced in the report of the commissioners, " should be finally and conclusively determined by the Supreme Court, without further appeal or right of review or ulterior litigation, and hence cannot in any form be brought into the court of last resort."

The motion to dismiss the appeal should be denied with ten dollars costs, besides disbursements."

BRADY and DANIELS, JJ., concurred.

Motion denied, with ten dollars costs, besides disbursements.